## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GEORGE CANNING,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | : **Civil Action No. 95-2029 (GK)** |
| | : |
| **U.S. DEPARTMENT OF JUSTICE,** | : |
| **et al.** | : |
| | : |
| **Defendants.** | : |
| | : |

### MEMORANDUM OPINION

George Canning ("Plaintiff" or "Canning") filed this case under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1996), seeking disclosure of various records from the Bureau of Alcohol, Tobacco and Firearms ("BATF" or "the Bureau"). Defendants are the United States Department of Justice and the United States Department of Treasury. This matter is now before the Court on the parties' Renewed Motions for Summary Judgment. Upon consideration of the Motions, Oppositions, Defendants' Reply, and the entire record herein, Defendants' Motion for Summary Judgment, [**#135**], is **granted in part** and **denied in part**, and Plaintiff's Motion for Summary Judgment, [**#136**], is **denied.**

I.   **BACKGROUND**[1]

Plaintiff's FOIA request seeks various BATF records related to Lyndon LaRouche, Jr., Paul Goldstein, Jeffrey Steinberg, and fifteen named organizations linked to LaRouche ("the requested subjects"). Plaintiff also requested "cross-reference" information concerning the requested subjects in any files maintained concerning fourteen other named organizations, and information related to an alleged investigation of DanBar Farm in Pulaski, Virginia. See Pl.'s Renewed Mot. for Summ. Judgment ("Pl.'s Mot.") at 2. Lyndon LaRouche, Paul Goldstein, and Jeffrey Steinberg, who were requested subjects, each submitted a privacy waiver.

After the Bureau produced various responsive materials several years ago, the parties filed cross-motions for summary judgment. The Bureau argued that it had produced all reasonably segregable, non-exempt records that were responsive to Plaintiff's request. Plaintiff claimed that BATF's search was inadequate, mainly because it did not include agent notes, interview reports, correspondence and other "raw intelligence" material. He also argued that Defendant's redactions pursuant to FOIA exemptions were too broad, and asked that the Court order Defendant to provide a supplemental

---

[1]   For a more complete recitation of the facts related to Plaintiff's FOIA request, see the Court's June 24, 1999 Memorandum Opinion on the parties' first motions for summary judgment. Canning v. Dep't of Treasury, No. 95-2029 (GK), slip op. at 1-3 (D.D.C. June 24, 1999).

Vaughn index and release all reasonably segregable information. Pl.'s First Cross Mot. for Summ. Judgment, Docket #15, at 17-25.

On June 24, 1999, the Court granted in part and denied in part Defendant's[2] motion for summary judgment.  The Court held that Defendant's search was inadequate, and ordered it to "conduct a full search of its files and record keeping systems for agent notes, interview notes, and other forms of 'raw intelligence' related to Plaintiff's request.  The Bureau was also ordered to submit a further filing to the Court setting forth the nature of the search conducted, releasing the non-exempt segregable portions of any located documents, or stating why, under the law of this Circuit, any such materials the Agency locates are exempt from production."  Canning, No. 95-2029 (GK), slip op. at 5.  The search was to include "any additional record keeping systems [other than the "TECS II" system] which may contain information responsive to Plaintiff's request."  Id. at 6.

The Bureau was also directed to include in its filing "its procedures regarding the creation and retention of documents" where an investigation is initiated, but insufficient information is developed to merit the opening of a BATF file, so that the Court could determine the adequacy of the search with respect to the alleged investigation of the DanBar Farm in Pulaski, Virginia.  Id.

---

[2]  Until October 2003, the Department of Treasury was the only Defendant in this case.

at 7.  The Court further ordered Defendant to produce any documents related to the DanBar Farm.

In response to Plaintiff's argument that Defendant had wrongfully withheld information that was already in the public domain, and for which Plaintiff had submitted transcripts of testimony, the Court ordered the Agency to release "any withheld information which is the same as that contained in the transcripts Plaintiff has provided."  Id. at 9.

The Court granted summary judgment to the Bureau on its withholdings pursuant to 5 U.S.C. § 552(b)(7)(D) ("Exemption 7(D)") (records compiled for law enforcement purposes), and 5 U.S.C. § 552(b)(3) (information for which disclosure is prohibited by another statute).  Id. at 12-15.

On July 13, 1999, Plaintiff filed a Motion to Amend the Court's June 24, 1999 Order, in which he argued that Defendant should produce a segregability analysis of information withheld under 5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)"), or in the alternative, that the Court conduct an in camera review of redactions made under Exemption 7(C).  Pl.'s Mot. to Amend, Docket #63, at 1.  The Court denied that motion on September 15, 1999.

On August 6, 1999, in response to the Court's June 24, 1999 Order ("June 1999 Order") on the parties' initial cross-motions for summary judgment, Defendant filed the Declaration of Peter J.

-4-

Chisholm, Acting Chief, Disclosure Division, BATF.[3]  With respect to the adequacy of the search, Chisholm stated that "[a]lthough TECS II is the only system of records that is likely to produce records responsive to Plaintiff's request, in response to the Court's Order, ATF's Disclosure Division conducted an additional search of three other ATF databases . . . [t]he federal firearms licensee database . . . ATF's Internal Security database . . . and the Correspondence Record System was attempted to be searched but it only contains records dating to 1997."  Chisholm Decl. ¶ 4. However, searches of these databases produced no additional responsive documents.  Chisholm also explained why various other databases were not searched.  Id.

Chisholm declared that BATF also searched for "agent notes, interview notes, and other forms of 'raw intelligence'," "by retrieving the original file on possible firearms or explosives violations by employees of Lyndon La Rouche from the Federal Records Center," but that the information in that file had already been produced to Plaintiff.  Id. ¶ 6.  Chisholm stated that "[h]ad any notes or other raw intelligence existed, they would . . . be in the official file."  Id.

Finally, attached to Chisholm's Declaration was ATF Order 3100.6C, "Law Enforcement Management Information System ("LEMIS"),"

---

[3]  Plaintiff submitted an extensive response to Defendant's filing.  The arguments made in Plaintiff's response were incorporated in his Renewed Motion for Summary Judgment.

which addresses, in part, how investigatory material is preserved when an actual BATF file is not opened.  It provides that in some instances, such as where an agent interviews a potential informant whose information is not useful, a "general case" may be opened. Id. ¶ 7.  Investigative files on general cases are "maintained for filing investigative reports and related documents."  Id.

With respect to the DanBar Farm, Chisholm stated that the Washington Field Division's general investigative files for 1985-1986, totaling seven boxes, were retrieved from the Federal Records Center, and that he, along with members of his staff, searched through the files for any mention of "DanBar Farm."  Id. "Additionally, because DanBar Farms is located within the jurisdiction of ATF's Roanoke, Virginia field office, [Chisholm] searched that office's investigative log, which contains the titles of all investigations, for 1985 and 1986."  Id.  Chisholm attested that these searches did not locate any additional information related to the DanBar Farm.

These searches did, however, uncover an additional file which contained documents responsive to Plaintiff's request.  That information was attached to Chisholm's Declaration, with exempt information redacted.  Chisholm asserts that this file could not have been located previously because Plaintiff did not provide the name of the investigation's subject in his FOIA request.  Id.

On October 1, 2003, Plaintiff was granted leave to file an Amended Complaint.  The Amended Complaint was substantively the same as Plaintiff's original complaint, except that it added the Department of Justice as a Defendant, because "functions of BATF had been recently transferred to DOJ."  Pl.'s Mot. at 3.

Defendants filed the instant Renewed Motion for Summary Judgment on January 3, 2005, and Plaintiff responded with a Renewed Cross Motion for Partial Summary Judgment.  Defendants argued that they had fully complied with the Court's June 1999 Order by conducting new searches for responsive information, releasing new information with redactions pursuant to Exemption (7)(C), and releasing certain information that Plaintiff had established was in the public domain.  Defs.' Mot. at 3.  Defendants also moved to dismiss the Department of Treasury as a Defendant.  Plaintiff's Motion challenged Defendants' withholding of certain information under Exemption 7(C), and re-asserted the segregability challenge with respect to information previously released by Defendants, as well as the new information released with Chisholm's Declaration. Pl.'s Mot. at 1.

## II. STANDARD OF REVIEW

Summary judgment will be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

to judgment as a matter of law.   Fed. R. Civ. P. 56(c).   A fact is
"material" if it might affect the outcome of the action under the
governing law.   Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248
(1986).   The party seeking summary judgment bears the initial
burden of demonstrating an absence of a genuine issue of material
fact.   Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In a FOIA case, the district court conducts a de novo review
of the government's decision to withhold requested documents under
any of FOIA's specific statutory exemptions.   5 U.S.C. §
552(a)(4)(B).   Thus, the burden is on the agency to show that
nondisclosed, requested material falls within a stated exemption.
Petroleum Information Corp. v. U.S. Dep't of the Interior, 976 F.2d
1429, 1433 (D.C. Cir. 1992) (citing 5 U.S.C. § 552(a)(4)(B));
Anderson, 477 U.S. at 254).   In this Circuit, the agency is
obligated to submit an index of all responsive material it has
withheld, either in whole or in part, under a FOIA exemption.
Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415
U.S. 977 (1974).

The court may award summary judgment in a FOIA case solely on
the basis of information provided in agency affidavits or
declarations that describe "the documents and the justifications
for nondisclosure with reasonably specific detail, demonstrate that
the information withheld logically falls within the claimed
exemption, and are not controverted by either contrary evidence in

the record nor by evidence of agency bad faith." <u>Military Audit Project v. Casey</u>, 656 F.2d 724, 738 (D.C. Cir. 1981). Thus, for summary judgment to be appropriate, the agency's <u>Vaughn</u> Index must set forth with particularity the justification for the exclusion, relating it to the particular part of the document to which it applies, <u>Mead Data Central, Inc. v. U.S. Dep't of Air Force</u>, 566 F.2d 242, 251 (D.C. Cir. 1977), and the agency's affidavits supporting the <u>Vaughn</u> Index must not be conclusory or too broadly sweeping, <u>King v. U.S. Dep't of Justice</u>, 830 F.2d 210, 219 (D.C. Cir. 1987).

## III. ANALYSIS

### A.    The Adequacy of the Search[4]

Plaintiff again challenges the adequacy of the Bureau's search, claiming it has still failed to account for "agent notes, interview reports, correspondence, or 'raw intelligence.'" Pl.'s Mot. at 8-9. Plaintiff alleges that within the materials BATF already released to him, there are references to certain other intelligence information, (<u>i.e.</u>, lists of witnesses, mentions of certain meetings), which BATF has not released. <u>Id.</u> at 6-12.

---

[4]    Plaintiff's arguments related to the inconsistencies between the Pritchett Declaration and the Chambers and Chisholm Declarations regarding whether raw intelligence constitutes "agency records," need not be addressed. <u>See</u> Pl.'s Mot. at 13-15. Dorothy Chambers, who was then the Chief of BATF's Disclosure Division, adequately explained that Pritchett's statement was inaccurate, and that her November 28, 1999 Declaration and Chisholm's Declaration both state the correct policy, which is that agent notes "are responsive to a FOIA request." Chambers Second Suppl. Decl. ¶ 5.

Plaintiff argues that there are standard procedures for recording information during an investigation, and that therefore, this additional intelligence information must exist. Id. As Plaintiff concedes, this issue was already fully briefed and addressed by the Court in its June 1999 Memorandum Opinion. Id. at 13-14.

In response, Defendants assert that "[t]he Chisholm Declaration (8/4/99) and Chambers Declaration (11/29/99) attest that all files, whether they be called investigative, field, or official, were searched for any 'raw intelligence' and unequivocally state that none was located. There are no other locations in which 'raw intelligence' would be located." Defs.' Reply at 4 (internal citations omitted).

To prevail on summary judgment, BATF must demonstrate that "it has conducted a search reasonably calculated to uncover all relevant documents." Weisberg v. United States, 745 F.2d 1476, 1485 (D.C. Cir. 1984). This can be achieved by providing "a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." Iturralde v. Comptroller of the Currency, 315 F.3d 311, 313-14 (D.C. Cir. 2003)(ellipses in original). "If a review of the record raises substantial doubt, particularly in view of 'well defined requests and positive indications of overlooked materials,' summary judgment

is inappropriate." Id. at 314 (quoting Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 326 (D.C. Cir. 1999)).

### 1. The Field Office File Versus the Field Division File

Plaintiff argues that BATF's search was inadequate in part because the field office file ("investigative file") should have been searched in addition to the field division file ("official file"). Pl.'s Mot. at 18. Defendants respond that the field office file need not be searched because it is, by official Bureau policy, a subset of the official file, and therefore by definition includes only duplicative information. Defs.' Mot. at 9-10. Plaintiff asserts that even if this is true, BATF should be required to prove that policy was in place during the relevant time period.

However, Dorothy Chambers, who was Chief of BATF's Disclosure Division, previously attested unequivocally that "[t]he field division's official file, which has been searched, contains ALL material in the file relating to the investigation." Chambers 11/30/99 Decl. ¶ 4. Moreover, the Chisholm Declaration states unambiguously that "the only location where agents' notes and interview notes would be found would be in the official file." Chisholm Decl. ¶ 6. Both declarations provide significant detail regarding exactly where, within these two files, the information Plaintiff seeks would be kept. Finally, Defendants conducted

additional searches of new databases, which did not produce any responsive documents.  Id. ¶ 4

Although Plaintiff has provided information to suggest that additional responsive information might exist, the Court is satisfied that by searching the official file along with the new databases, the Agency has met its burden of conducting a "search reasonably calculated to uncover all relevant documents." Weisberg, 745 F.2d at 1485; see also Perry v. Block, 684 F.2d 121, 128 (D.C. Cir. 1982) (the agency need not demonstrate that no further responsive documents could "conceivably exist"); The Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 892 n.7 (D.C. Cir. 1995) (noting that failure to locate particular documents does not alone render search inadequate).  Accordingly, the Court will grant Defendants summary judgment on the adequacy of their search for "agent notes, interview reports, correspondence, or 'raw intelligence.'"

### 2.  The DanBar Farm in Pulaski, Virginia

In his FOIA request, Plaintiff sought information related to an alleged investigation of the DanBar Farm in Pulaski, Virginia. With his first motion for summary judgment, Plaintiff provided information which he believes indicates that such an investigation did take place.  Pl.'s Mot. at 25.  Although Plaintiff received certain documents relating to the DanBar Farm in response to his FOIA request, he maintains that there must be more information the

Bureau has failed to disclose.  Id. at 16.  This issue was also fully briefed in the parties' first motions for summary judgment.

In its June 1999 Order, the Court required Defendants to "describe its procedures regarding the creation and retention of documents in those instances where some investigation is conducted, but insufficient information is developed to merit the opening of a BATF file," so that it could evaluate the adequacy of the Bureau's search with respect to the alleged DanBar Farm investigation. Canning, No. 95-2029 (GK), slip op. at 7.  As noted above, Defendants provided ATF Order 3100.6C, which provides that in such instances, a "general case" may be opened, and that investigative files on general cases are maintained for filing investigative reports and related documents.  Chisholm Decl. ¶ 7.

The Court is satisfied that Defendants' search was adequate with respect to the DanBar Farm.  Prior to the parties' first summary judgment motions, the Bureau conducted a thorough search on the TECS II system.  Pritchett Decl. ¶ 24.  Robert Pritchett, who was formerly Chief of BATF's Disclosure Division, also declared that he spoke with an agent, in a position to have known about such an investigation if one was conducted, who "advised [him] that he was not aware of an ATF investigation ever being conducted on 'DanBar Farm' and that he had no notes or documents which indicated that such an investigation was ever opened."  Second Pritchett Decl. ¶ 10.

The information provided in response to the Court's June 1999 Order further supports the conclusion that the Agency conducted an adequate search.  Peter J. Chisholm, Acting Chief of BATF's Disclosure Division, as well as others, searched through seven boxes of the Washington Field Division's general investigative files for 1985-1986, as well as through the Roanoke, Virginia office's investigative log.  Id.  The fact that Chisholm located additional documents responsive to Plaintiff's request, although they were unrelated to the DanBar Farm investigation, suggests that the search was thorough and detailed.  Accordingly, the Bureau has met its burden of conducting a "search reasonably calculated to uncover all relevant documents" related to the alleged DanBar Farm investigation.  Weisberg, 745 F.2d at 1485; see also Perry, 684 F.2d at 128 (the agency need not demonstrate that no further responsive documents could "conceivably exist"); Nation Magazine, 71 at 892 n.7 (failure to locate particular documents does not alone render search inadequate).  Therefore, the Court will grant Defendants summary judgment with respect to the adequacy of the search for documents related to an alleged investigation of the DanBar Farm in Pulaski, Virginia.

**B.   Information Withheld Pursuant to Exemption 7(C)**

Plaintiff asserts that Defendants' withholdings under 5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)"), were overly broad, and that Defendants failed to disclose non-exempt segregable information.

Pl.'s Mot. at 28.   Exemption 7(C) covers records or information "compiled for law enforcement purposes . . . to the extent that the production of such . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."   5 U.S.C. § 552(b)(7)(C).

The Court already addressed most of Defendants' 7(C) withholdings in its June 24, 1999 Order and held that "with the exception of any identifying information that specifically duplicates what is already contained in the public record provided by Plaintiff, BATF has met its burden . . . ." Canning, No. 95-2029 (GK), slip op. at 11.

### 1.   Compliance with the Court's June 24, 1999 Order Regarding Information in the Public Domain

In his first cross motion for summary judgment, Plaintiff argued that certain information withheld under Exemption 7(C) was already in the public domain, and therefore should be disclosed. The Court ordered Defendants to release "any withheld information which is the same as that contained in the transcripts Plaintiff has provided." Id. at 9.   In response, "defendants compared the information contained in plaintiff's transcripts with the names of law enforcement agents that were withheld.   Defendants released all references to Sheriff Isom in the ATF case report, since it was evident from the transcripts that Sheriff Isom was the Sheriff of Loudon County at the time.   None of the other names mentioned in the transcripts were in the documents received by plaintiff."

-15-

Defs.' Mot. at 2; Chisholm Decl. ¶ 5.  Plaintiff now argues that Defendants have an obligation to go beyond just the names mentioned in the transcripts, and disclose more substantive BATF-related information discussed within the transcripts. Pl.'s Mot. at 38-39.

The Court agrees.  The Court ruled that "BATF must release any withheld information which is the same as that contained in the transcripts Plaintiff has provided," Canning, No. 95-2029 (GK), slip op. at 9.  Such information may incorporate more than mere names.[5]  Chisholm's Declaration speaks only to "names mentioned in the transcripts." Chisholm Decl. ¶ 5.  Therefore, Defendants must submit an additional affidavit confirming that none of the other public information Plaintiff put forth remains redacted, or if that is not the case, Defendants must release such information.

### 2. Segregability of Information Attached to the Chisholm Declaration

Plaintiff raises several arguments with respect to the segregability of information provided by Defendants in their response to the Court's June 1999 Order.

FOIA requires that "any reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b).  To satisfy the Court that all reasonably segregable information has been released, an agency must

_____

[5]  The Court noted, however, that "[i]nformation about an individual's involvement in an investigation which is different in time or nature from that which has been publically acknowledged remains private." Id. at 10.

"provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." Mead Data Central, 566 F.2d at 251. However, the agency need not provide such detailed information that the exempt material would effectively be disclosed, and the agency need not "commit significant time and resources to the separation of disjointed words, phrases or even sentences which taken separately or together have minimal or no information content." Id. at 261 n.55; see also Johnson v. Executive Office for U.S. Attorneys, 310 F.3d 771, 776 (D.C. Cir. 2002).

Courts have an affirmative duty to consider segregability sua sponte. Trans-Pacific Policing Agreement v. U.S. Customs Serv., 177 F.3d 1022, 1028 (D.C. Cir. 1999). Accordingly, the Court has already considered this issue with respect to the information presented with the parties' first summary judgment motions. In addition, Plaintiff's Motion to Amend the Court's June 24, 1999 Order made many of the same segregability arguments he makes in the instant Renewed Motion for Summary Judgment. Those arguments were rejected when the Court denied Plaintiff's Motion to Amend on September 14, 1999. Therefore, the Court's treatment of Plaintiff's arguments regarding the alleged withholding of

segregable information under Exemption 7(C)[6] will be limited to consideration of those FOIA submissions which post-date the Court's June 1999 Order.

With respect to material the Defendants released in response to the Court's June 1999 Order, Chisholm declared that "[t]he identities of Federal, State and local law enforcement personnel who were involved in the investigation are being withheld . . . and the names and identifying information of third parties who were interviewed by ATF and names of those who were merely mentioned in the records at issue were properly redacted . . . ." Chisholm Decl. ¶ 7.

The names of law enforcement officers who work on criminal investigations have, traditionally, been protected from release by Exemption 7(C). <u>Davis v. United States Department of Justice</u>, 968 F.2d 1276, 1281 (D.C. Cir. 1992); <u>Lesar v. United States Department of Justice</u>, 636 F.2d 472, 487-88 (D.C. Cir. 1980). By the same token, individuals who are not law enforcement officers, but who provide information to them, also have statutory privacy interests in their anonymity. <u>Computer Professionals for Social Responsibility v. United States Secret Service</u>, 72 F.3d 897, 904 (D.C. Cir. 1996). In order to overcome legitimate statutory

---

[6] The same is true for Plaintiff's arguments related to Exemption 7(D), as the Court has already conducted the necessary segregability analysis and granted summary judgment to Defendants on this issue.

privacy interests, the plaintiff must demonstrate what public interest exists in disclosing the names of the individuals in question, and must also demonstrate that such public interest is both significant and compelling.  Senate of the Commonwealth of Puerto Rico on Behalf of Judiciary  Committee v. United States Department of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987). Plaintiff has failed on both counts:  he has not demonstrated any public interest in disclosure and certainly not one that is both significant and compelling.

Finally, Plaintiff argues that information related to Roy Frankhouser should be released because his name has been disclosed in one place on an attachment to Chisholm's Declaration.  Pl.'s Mot. at 36.  Defendants respond that this inadvertent failure to redact should not strip Mr. Frankhouser of his privacy interests. Defs.' Reply at 9.  The Court agrees.  It would be contrary to the spirit of FOIA to deprive an individual of his privacy rights because of an agency's administrative error.

Plaintiff also argues that "because Frankhouser has been publicly acknowledged by BATF as having been an informant in the early 1970's, any information to that effect must be disclosed as well."  Pl.'s Mot. at 36; Canning's Fifth Decl. ¶¶ 5-6.  However, as the Court noted in its June 1999 Memorandum Opinion, "information about an individual's involvement in an investigation which is different in time and nature from that which has been

publically acknowledged remains private." Canning, No. 95-2029 (GK), slip op. at 10. Plaintiff has not met his burden to show that Frankhouser's investigatory role in the 1970's has any relation to his FOIA request. See also Davis v. Dep't of Justice, 968 F.2d 1276, 1279 (D.C. Cir. 1992) (plaintiff has the burden to show the specific information he seeks to have released has already been made public). Therefore, Plaintiff's request with respect to information related to Frankhouser is denied.

### C.   The Proper Defendants

Defendants move to dismiss the Department of Treasury as a Defendant, on the ground that BATF is now a component of the Department of Justice. Defs.' Mot. at 15-16. Defendants do not provide any detail as to when BATF became part of the Department of Justice, or as to how dismissing the Department of Treasury would affect continued compliance with the Court's orders in this case.

This case was filed in 1995. The Department of Justice was not added as a Defendant until 2003. And as Plaintiff notes, "all searches and all exemption-claims [sic] were made by Treasury, and all litigation in this case from 1995 until the amendment of the Complaint in 2003 has been conducted by Treasury." Pl.'s Mot. at 41.

The Court concludes that keeping both Defendants in the case will in no way adversely affect the Department of Treasury and, more importantly, will afford Plaintiff the best opportunity to

obtain any documents to which he is entitled, as well as ensure full compliance with the Court's orders.  Therefore, Defendants' Motion to Dismiss the Department of Treasury is **denied.**

### III.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment, [**#135**], is **granted in part** and **denied in part**, and Plaintiff's Cross Motion for Summary Judgment, [**#136**], is **denied.** An Order will issue with this Memorandum Opinion.


July 16, 2008                          /s/_____
                                       Gladys Kessler
                                       United States District Judge


**Copies to:** attorneys of record via ECF and

George Canning
60 Sycolin Road
Leesburg, VA 20175